Please call the first case. 07-2698. May it please the court. Good morning. My name is Laura Weiler and I'm here on behalf of Stanley McDonald. Make sure you speak into the microphone. These proceedings are being recorded. Thank you. I would like to address both issues contained in the brief and reserve some time for rebuttal, please. Tell me your name again, please. Laura Weiler. As to Issue 1, the trial court erred when it refused to instruct the jury on involuntary manslaughter, where there was sufficient evidence of recklessness to justify this instruction. If there is some evidence in the record which, if believed by a jury, would reduce the crime to involuntary manslaughter, then a involuntary manslaughter instruction must be given. Here, notably, even a slight amount of evidence will raise the issue and justify the giving of this instruction. Here, there was more than just a slight amount of evidence. Some of the factors to consider in determining whether an instruction Counsel, what's the standard of review? Abuse of discretion. Okay. And so in order for us to rule the way you want us to, what would we have to find? You would have to find that there is evidence of recklessness to justify the instruction. When there is evidence in the record to justify the instruction and a court does not give that instruction, that constitutes an abuse of discretion. That's the only thing we'd have to find in order to rule in your favor? Yes. Okay. And here, there is significant evidence of recklessness. Again, some of the factors to consider in determining whether or not an instruction should be given is the disparity in size. Here, Lawrence Bladney was taller, arguably bigger, and he was also notably six years younger than Stanley McDonald. But, Counsel, for the most part, there wasn't a great disparity in size and weight between these two people, was there? There's not a great disparity. But, you know, in considering this factor, it does weigh in favor of McDonald. The most important factor to consider, however, is the second one, which is the brutality and duration of the offense and the severity of the victim's injuries. Here, the injury that caused the death was a two-inch cut to Bladney's face, two inches, that happened to nick the carotid artery, which led to a stroke, which led to a swelling of the brain, which ultimately led to the family discontinuing life support. The medical examiner specifically testified that you can't blame him for that artery in the location where it is. The fact that this was a bizarre counsel injury — Well, isn't it true, though, that where the evidence proves that the defendant acted with the intent to kill or seriously injure the victim, an involuntary manslaughter instruction is not appropriate? Well, an involuntary manslaughter instruction is appropriate where there is evidence of recklessness. And where it's not — Answer my question first before we — I'm asking you a very narrow question. Mm-hmm. Where there is overwhelming evidence of intent such that it disproves recklessness, then an instruction is not warranted. But it's important to remember that a determination of an intent is something that is particularly suited to a jury. And this is a question of fact for a jury to decide. And here, it's a closed question. But the question of what instructions are given is particularly reserved to the judge. And the judge makes that determination based on all of the facts. And what I ask you, isn't it true that where the evidence proves that the defendant acted with the intent to kill or seriously injure his victim, an involuntary manslaughter instruction is not justified? Is that true or false? That is true. Okay. Let me ask you another question. Earlier in the day, this defendant had been seen to be wielding a knife and had said he was going to kill the victim. Isn't that true? Yes. If you take a butcher knife and slash it towards somebody's face, would you say that you intend to injure them? Not under these circumstances. Absolutely not. You disagree. You think slashing a butcher knife towards someone's face, you don't intend to injure them. Yes, because you have to take the facts of this case into consideration. And he said he was flinging the knife in the dark. Just answer that narrow question. You think a person who slashes another person's face with a butcher knife does not intend to injure them. Is that what you're saying? I can't say that, no. Because this fact, the facts of this case demonstrate a situation in which what you said does not prove murder. Well, I just want you to answer my questions when I ask you a question, because believe me, we have all read the briefs. We've read the record. We know the facts. When I'm asking you a narrow question, I would just ask you to answer that, and then you can go on with your argument. So I'm just asking you a very narrow question. Okay. And my answer to that would be no. And what is required under this analysis is taking the facts and circumstances under consideration. That requires me to discuss the facts of this case. And it's important to remember the totality of the circumstances in this case. Specifically, the defendant's statement that he did not mean to injure Gladney, that he was flinging his knife, which indicates recklessness, in the dark. The cop said, I couldn't see back there. I had to use a flashlight. Flinging a knife in the dark is reckless behavior. It's also important to remember that Gladney was intoxicated, which is a factor to consider. He had a blood alcohol level of .19, which is more than twice the legal limit. He had cocaine in his system. He was extremely combative. He broke free of his restraints. It required two firemen to hold him down in the hospital. This indicates that there was a struggle and that he was flinging his knife. It's for the jury to decide whether it was reckless, whether he was trying to defend himself, whether he was spontaneously doing this in response to being hit, or whether it was intentional. And I do want to address the fact that you said he did indicate during the day that he was going to kill Gladney. There's nothing in this record that indicates that was anything more than hyperbole. Or the fact that he was carrying a butcher knife was unusual. Well, he actually killed him, so I think it was more than hyperbole. Under unusual circumstances, though, remember, a two-inch cut that you couldn't aim for in the artery. And people and the witnesses who heard him say this didn't take it seriously. They indicated, you know, when somebody says, well, I'm going to kill him when he gets home, that that was hyperbole. So I submit that there is sufficient evidence of recklessness to justify the giving of an involuntary manslaughter instruction. As to Issue 2, the trial court erred in instructing the jury on armed robbery, where McDonald had no notice or opportunity to defend against that accusation and where the fight did not constitute an armed robbery in the first place. Nowhere, either in the indictment or in any pretrial motion or hearing, did the State indicate that it was going to characterize this fight between McDonald and Gladney as an armed robbery. Now, wait a minute. The facts that were presented, let's set aside for the moment the charging document. The facts that were set out in the testimony was that Mr. McDonald struggled with Mr. Gladney over a bicycle. Yes. Whose bicycle was it? The evidence indicates that it was Gladney's bicycle. Okay. Now, when that struggle occurred, did Mr. McDonald have a weapon? He had a weapon in his back pocket, yes. Hey, sounds kind of like an armed robbery. It's important. Under those, I would say it's not an armed robbery for important reasons. First of all, the State never charged him with armed robbery in the indictment, and the record indicates it never once occurred to the State that this was an armed robbery until the middle of trial. Remember, this was a domestic dispute over where the bicycle should go. Gladney had full access to the basement. There's no dispute over that. IPI 14.05, which is what you are asserting shouldn't be given, says, a person commits the offense of armed robbery when he, while carrying on or about his person, or otherwise, or while otherwise armed with a dangerous weapon, that would be the butcher knife, intentionally or knowingly takes property from the person or presence of another by use of force or by threatening the imminent use of force. Which part of this didn't occur here? I submit both the taking element and the use of force element. The taking element, because — Stabbing with the butcher knife wasn't the use of force? It's whether the — you can only consider whether there was an armed robbery up to the point of the stabbing, because he wasn't using — the stabbing was part of the alleged murder here. And at that point in time, Gladney's will was not overcome. He had not used sufficient force to constitute an armed robbery. In fact, Gladney was resisting and punched McDonald. So I submit that there's not a sufficient use of force here. What I have more issue with is the fact that the taking from a person or presence. Again, this was a domestic dispute. Gladney had full access to the basement. He was not taking it from the person or presence of Gladney. Counsel, the language of the instruction says what it says. And I ask you, which part of that didn't occur or did you disagree with? And what was your answer? Both, the taking and the use of force. So you don't think he used force and you don't think he tried to take the — Sufficient to constitute an armed robbery. Okay. No. Because the case law indicates that in order to constitute a robbery, the use of force has to be sufficient to overcome the person's will through fear or through actual force. And in here, Gladney's will wasn't overcome. He was holding on to the bicycle. But after he was stabbed, he fell to the ground. That didn't overcome him? The stabbing was part of the alleged murder. And so it's only fair to consider up to the point of the stabbing, whether he was at that time up to the point of the stabbing committing an armed robbery. And I would like to say that, again, to say that this, under these circumstances, was an armed robbery leads to absurd results. Anytime a friend is about to drive drunk and you take the keys away from them and they don't want you to take the keys away from them, you have a Swiss Army knife in your pocket, that's an armed robbery. If you're having a fight with your spouse or your partner about where certain items should be stored in the house and you take it away, the person objects or doesn't give consent, that's a robbery. Again, if you have scissors in your hand or you have a Swiss Army knife, that's a robbery. That's not what I contend. That's not what the legislature intended in creating an armed robbery. So I submit that, no, the facts of this case do not constitute an armed robbery. The bigger problem I have with this, though, is the fact that McDonald's had no notice or opportunity to do a crime. That's the interesting part of this. Did you see any cases that pattern this, that are like this? No. I was not able to find anything. This is a – I think the argument is there was no verdict. And so, therefore, he was not convicted of this charge, and so, therefore, there's no real due process. Actually, the argument is that he had to defend against this accusation of armed robbery in order to succeed on his self-defense arguments. So it was an accusation. But he had no opportunity throughout the course of the trial to defend or address this armed robbery accusation. And that makes a big difference because counsel could have barred the jury differently, struck, used differently, different preemptive strikes, could have – His defense was at all times what? It was self-defense, yes. There you go. So how was – where is the prejudice? Where is the prejudice? Everybody knew what the facts were. Everybody knew what the facts were. Now, you may choose to say that was not an armed robbery and, you know, everybody – people can disagree on things like that. But still, you know, taking the light most favorable to the people of the state of Illinois, I think you've got a long way to go to convince – well, I won't say any more. Well, give me a shot because I think I have a strong argument here. The fact of the matter is not even the State thought that this was an armed robbery until the middle of trial, until after four or five witnesses had already testified. Counsel, you presented a self-defense defense. That was the theory of your case. It was self-defense. And under the instructions that you are complaining should not have been given, such a defense is negated if the person was committed – was committing an armed robbery at the time of the killing. Well, all of the facts I asked you just a few minutes ago, which of those you disagreed with, and you basically disagreed with just about everything, although he did have a knife, he did try to take the bicycle, he stabbed the guy three times, one of which caused the victim's death, all of those things you disagree with. But the statute says a self-defense – defense is not available if an armed robbery is being committed. And everything that you disagree with, the facts established actually occurred. I'm not arguing that this instruction is inaccurate. What I'm arguing is that the defense had no opportunity and could not reasonably anticipate that the State would characterize these facts and put them together in a way such that it would accuse McDonald. And I think I tried to ask you before, maybe I wasn't clear enough. How would that have changed? What would the defense attorney have done differently? Well, I have a whole list of things, if you'd like to hear them. First of all, as I was saying, they would have – Say one or two. In addition to bargering the jury differently and possibly questioning them about their experiences with armed robbery, using different preemptory strikes, it could have questioned the assistant State's attorney who took the statement from McDonald. Did you ask him about the self-defense, more about the struggle over the bike? There was not a lot of evidence in the statement about that. Could have asked Calvin Holliday and Mary Moore and Charlotte Davis about the bike. Who owned it? Did McDonald ever use it? Did McDonald feel he had equal rights to the bike? Who had access to the basement? Could have filed a motion in limine, preemptively asking the court to prevent the State from characterizing this as other crimes evidence, saying that the prejudicial impact outweighed the probative value. Could have made other tactical decisions. Who knows what the court would have done if there had been an offer on the table, if they had assumed that this was going to be a problem. And also I'd like to point out that this happened during the jury instruction conference. Closing arguments happened right after that. So counsel had no time to shape her closing arguments to adequately address this. So there's a lot of things that could have happened here. Had she known, had defense counsel known, that this was going to be characterized as an armed robbery. She had no notice. She had no opportunity to defend against this accusation. And that's fundamentally unfair. It goes against our principles of due process. Our due process right to a fair trial. If there are no other questions, I deserve my remaining time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning, counsel. May it please the Court. I'm Assistant State's Attorney Peggy Curtin for the people of the State of Illinois. Why did the people of the State of Illinois charge him with attempt or with armed robbery? Pardon me, Your Honor? Why wasn't he charged with armed robbery? Your Honor, we're not looking to convict the defendant. I'm asking a question. Why are you not looking to convict the defendant of armed robbery? If this is so clear in armed robbery, why didn't you charge him? Your Honor, what we were attempting to do was rebut the defendant's claim of self-defense and decide, have the jury properly decide. Why didn't you charge him with felony murder? That would have been easier to prove, wouldn't it? Your Honor, we did not intend to proceed on a felony murder theory and we used to. Why? Because maybe it never occurred to you that this was an armed robbery until after the trial was over? Well, Your Honor. Give me a reason why this came up then. Your Honor, if I could just briefly give a little bit of chronology. Prior to trial, defendants stated that their affirmative defense was self-defense and the trial court responded that the people were entitled to rebut defendant's claims. Defendant raised a claim of self-defense during the trial and asked for a self-defense instruction at the conference. At that time, the trial court decided there was enough evidence and gave the self-defense instruction. Thus, the issue of who was the initial aggressor was very much in dispute and the people requested the initial aggressor instruction. But doesn't that also, if the jury finds that the defendant is the initial aggressor, doesn't that also negate the self-defense defense? No, it does not negate the self-defense instruction, Your Honor. So you can use self-defense. If the jury finds that the defendant is the initial aggressor, his self-defense theory is still valid? Is that what you're saying? No, Your Honor, I apologize. I misspoke. The self-defense theory would not be valid at that point. But, Your Honor, in response to the defendant's ---- So you had a vehicle for negating his self-defense theory. So why throw in the other thing? Was this a bit of piling on? Your Honor, there was no piling on with respect to the people's requested jury instructions. Well, my question, counsel, is very narrow. The initial aggressor instruction was given. If the jury accepts that, that would negate the self-defense theory of this defendant. Isn't that correct? Yes, that is correct. So that instruction was given. So what was the need to also give an armed robbery instruction? Your Honor, the armed robbery instruction stated that a person is not justified in the use of force if he is attempting ---- I know what the instruction says, counsel. I can read it. It's right in front of me. I'm asking you why did the people choose to give that in addition to the initial aggressor instruction because that was the court that already agreed to give that? Your Honor, the instruction arose here because the defendant exercised his right to raise his affirmative defense of self-defense when he alleged, Lawrence hit me first. And you had an instruction that talked about initial aggressor. Can you answer the question? Yes, Your Honor. Why did you also need this? Because the jury ---- the trial court properly decided that the jury had to consider defendant's conduct prior to Lawrence striking the first blow. And that would have been the initial aggressor instruction, which the court agreed to give, that was proffered by the State. The defense objected to it. The State offered it and the judge gave it. Why wasn't that enough? I think that's my question. Your Honor, the defendant's actions in his attempt to take Lawrence's bike arguably supports the armed robbery instructions. It's undisputed that he was armed with a knife. I'm going to ask Tice's question. The State has the ultimate authority to decide what to charge this person with. Is that right? Yes, Your Honor. Based on the facts of the case. So you could have charged him with armed robbery. You could have charged him with felony murder. You could have charged him with whatever it is you wanted that fit those facts. If you were so convinced that an armed robbery had occurred, why didn't you charge him with armed robbery? Your Honor, I cannot speculate why the trial attorneys took the action they took. I'm the only one that's here, so I have to ask you on behalf of the State. And, Your Honor, I'm not in a position to speculate why they did what they did. So do you think it is fair, if the State has the State is holding all the cards in terms of charging. So if the State chooses not to charge the defendant with something, and you don't know why, you know, I'll accept that. So what do we do with that? So, well, we didn't charge him, and that was a mistake, but we argued it to the jury anyway, and that's okay. Your Honor, once the defendant raised the affirmative defense of self-defense, it was incumbent on the people to negate any one of the self-defense elements. Here, the people negated all the elements, and therefore the defendant's claim of self-defense failed. It was incumbent upon us to negate those elements. And the jury instruction was proper in light of the fact that it was supported by the evidence, and it accurately stated the relevant law in Illinois regarding self-defense and the initial aggressor. What about the prejudice ideas that we just heard about, the list of ideas that were raised here? That had anyone ever mentioned the words armed robbery up until the instructions conference, this trial would have looked different. Your Honor, there was no notice or due process violation since the defendant was not charged with armed robbery. Pretty circular argument you're giving us, you know. But we're trying this case. We've been trying it for years. Call out witnesses. We're at the end of the day, and all of a sudden we come up with a new theory that's never been charged, never been there before. So why isn't that not prejudice to come up with this new idea? Your Honor, the challenge instructions were triggered in response to defendant's claim of self-defense and the disputed issue of who the initial aggressor was. Once defendant raised the affirmative defense of self-defense before the start of trial, before they started or determined what they were going to cross-examine or what their attack was going to be. So by raising self-defense, they had to have known that at the instructions conference that the State was going to ask for an armed robbery instruction. Is that right? No, that's not correct, Your Honor. However, they did know that it was incumbent upon the State to negate their claim of self-defense. And that's exactly what the State did. I see a lot of different things. The State has an obligation to pursue the most, what can I say, in terms of legal theories, the legal theories that will most support its case. Certainly if you had an armed robbery count here, wouldn't that be a consecutive sentence in this situation maybe? The State should have, if the State thought, believed this was an armed robbery, the State, in order to fully prosecute this case, should have charged them with armed robbery. That would have necessarily had a different, lower, easier to prove felony murder. Consecutive sentencing would have been implicated. Your Honor, Illinois law does not prohibit the giving of a definitional jury instruction for an uncharged defense. What case do you have? Tell us about this. I want to see some cases where something like this happened. Your Honor, I do not have a case that cites, that states this. However, the statute, the self-defense statute. Wait, wait, wait. You said Illinois law. So there's no case. This has never, ever happened in any case that anybody has ever filed. Is that right? I think the circumstances of this case are somewhat unique, Your Honor. There's never been a, you know, self-defense in a murder case that came up before where suddenly this happened? Your Honor, I could not find a case that was, that had an extremely similar fact pattern. However, the cases the defendant cites to Allen, Toney, and Maxwell stand for the proposition that the defendant cannot be charged with, or excuse me, cannot, the jury cannot be given verdict forms for uncharged offense. And here, they were not given verdict forms for a robbery. But you have no cases that say that they can be given instructions either. Because this has never happened before. No judge has ever done this before in a reported case that we could ever find. Right? Your Honor, I could not find something that was directly on point for this case. However, in the case of People v. Huddleston, this Court determined that the trier of fact determines whether a homicide is murder or justified as self-defense. And in light of that, Your Honor, I would suggest that these instructions were warranted because they were based on the evidence and they were accurately stated in the law of self-defense in Illinois. Well, let me ask you another question. Do you, this is in a little different direction, but does the defendant have a right to know the charges with specificity, what he's charged with? Yes. And he was charged specifically, I apologize. I'm just asking you, yes. And do you agree that most defenses are crafted to respond to the crime charge? I agree with that. Okay. So if the defendant had been charged with armed robbery, his defense may have been different. Would you agree with that? No, I would not agree with that, Judge. Okay. He raised his affirmative defense of self-defense prior to trial. You just said earlier that you believe that a defense is crafted to respond to the charge. But now you're saying if he had been charged with armed robbery, he would not have crafted his defense to respond to the armed robbery. It can't be both, Counsel. Your Honor, because he wasn't charged with armed robbery, he didn't have to change his tact or change his defense. That's not what I asked. That's not what I asked. I certainly don't. Don't you agree, had he known earlier, maybe not that he was going to be charged with armed robbery. Maybe not that he was, you know, sentencing might be different. Let's take all that. Just what is the evidence? Don't you think the case would have looked differently had the words armed robbery been said earlier? No, I do not, Your Honor. And if I could just ask any questions about, from the witnesses who knew all these people, what do you know about this bike? Have you ever seen the defendant ride the bike? Do you know who had the keys to the bike? Did the bike have a lock? Wouldn't they have, you know, wouldn't these ideas have triggered a different kind of defense? No, Your Honor. The ownership of the bike and the access to the bike were unrefuted. The defendant and the victim lived together in the basement of his aunt's apartment. Wait a minute, Counsel. Wait a minute. Nobody asked any questions about who the bike belonged to. If that was in the transcript, I didn't see it. No one asked any questions about who that bike belonged to. They referred to the bike as his bike, meaning Gladney's bike. But nobody ever asked that because that wasn't in dispute. Exactly. And because it wasn't in dispute, why would the defense have inquired further of it? Well, that's Justice Tice's question. If the defendant had been charged with armed robbery, that would have been in dispute. So there would have been questions about the ownership of the bike, where the bike is kept, who had access to it, and all of the things that would constitute establishing a true taking under the armed robbery statute. That's what Justice Tice was asking. So we're kind of going round and round in a circle here, so why don't you go to your next point? Okay. Your Honor, defendants claim that the giving of the challenge instructions was error that required reversal and remand is without error. We know this because after the jury rejected the defendant's claim of self-defense, they then went on to consider second-degree murder. In order to find the defendant guilty of second-degree murder, the jury had to find that the defendant subjectively believed that his use of force was justified, but that his belief was objectively unreasonable. By not finding the defendant guilty of second-degree murder, the jury rejected defendant's claim that he subjectively believed that he was Could the fact that they were instructed about armed robbery have played into that? No, Your Honor, and if I could just explain why. Because the jury found that defendant did not have a reasonable, excuse me, a subjective belief, they also rejected one of the required self-defense elements, that defendant actually and subjectively believed that a danger existed which required the use of force applied. Therefore, because the jury found the defendant did not have a reasonable or unreasonable subjective belief that he was justified, even assuming error in the instructions at issue, there is no way the verdict would have been different. Either way, the defendant is guilty of first-degree murder. But counsel, if you have already decided that the defendant was guilty of armed robbery, and the way the State made the closing argument, it was made as in a conclusory summary fashion, this defendant was committing an armed robbery, then the only question that you're asking the jury to decide is whether he was justified in using force. So, I mean, that goes to your, I think that refutes your argument that they found, they did not find that he was justified in using force, the force that would change the charge to second-degree murder. Your Honor, in the people's closing arguments, they explain the significance of the instructions and specifically stated that they weren't looking for conviction for armed robbery for the defendant. But put simply, the defendant was not justified in using a force. But they basically said he was committing an armed robbery. So the jury had to decide was the force, you know, was he using appropriate force and that would go to the second-degree murder charge. That's exactly right, Your Honor. And they decided and rejected the fact that he was justified in using that force. Maybe because they found that he was committing an armed robbery. Right. I mean, that's the place you put yourself in by coming up with this theory. It cuts both ways. When you read the closing argument, you assume he's charged with armed robbery and that if you find, all you need to know that the defendant, in fact, was committing an armed robbery is the law tells you that a person is not justified in using force if he is committing an armed robbery. So you find if he's committing an armed robbery, then there's no type of self-defense that's available, even a second degree. Your Honor, it's important that this Court look at the totality of the circumstances and the events leading up to this stabbing and the events that followed it. The defendant is walking around with a butcher knife, threatening to kill the victim all day. When he returns home the final time, the defendant made good on his threats. He approaches him, holding the butcher knife, and he knows that Lawrence is not armed. The defendant stabs him three separate times. He is not justified. Counsel, you still haven't answered the question. The State has the absolute prerogative to determine what charges to file based on the facts. The State chose not to charge him with armed robbery, not to charge him with felony murder. That was your choice. The defense crafted the defense, as they do in all criminal cases. And is it the State's prerogative to determine defense strategy? You know, what the defense is going to do? That's their prerogative. It is their prerogative, Your Honor. And they chose, they exercised their right to raise the affirmative defense of self-defense. It was incumbent. I apologize. You don't know what they would have done had they been charged with the two other crimes. You're saying, oh, they wouldn't have done anything differently. How do you know that? Your Honor, the defendant cross-examined all the witnesses at trial. They cross-examined. Without a charge of armed robbery being part of the mix. And without the possibility of convicting defendant of the armed robbery, Your Honor. What the armed robbery instruction told them was that defendant was not. I keep trying to put this in a box. We've talked about other crimes. This is not an evidence problem. Or maybe it is. We've just never seen anything like this. That's kind of the problem. Which makes you wonder, why don't we ever see this? But I'm not sure quite what our analysis is supposed to be here. Counsel is using this idea of due process and surprise. Maybe. But I also have these other problems. Had this come up earlier, what about the motion to eliminate idea? Could the defendant have no opportunity to keep this idea out of this case? Because it didn't come up. I mean, in terms of evidence. None of this came up during the trial, so we had no opportunity to try to litigate the idea of whether this was other crimes evidence or not. That's usually how we see non-charged crimes in a case. And the only kind of analogy I can come up with is in cases where we say, okay, you're charged with non-robbery, and now they're going to try to introduce this other conduct. And then we have this long discussion. How does it come in and how is it used? Is it substantive evidence? You know, all those kind of ideas. That's the only place I've ever seen something like this come in. But that doesn't quite work because that's all about evidence, and, of course, this came after all the evidence was already in place. I'm sorry. I've never seen anything like this happen before, and I just can't get an analysis around it. And when you have the prosecutor saying he committed armed robbery, that's the end of the sentence. I mean, he's explaining that to the jury in closing argument. There is no other opportunity to do anything. And then the defense gets the opportunity, then the State comes back on rebuttal, and the last thing the jury hears is about this armed robbery. How does the defense have any time to respond to that or any opportunity? I mean, that's their argument, that they would have crafted their defense differently, and this was introduced at a time when there was absolutely no opportunity for them to do anything about it. How do you respond to that? As I stated previously, prior to trial, they exercised their right to raise the affirmative defense of self-defense. And you responded to that by issuing the initial aggressor instruction, which the judge gave. That's correct, Your Honor. And furthermore, the self-defense statute states that a person is justified in the use of force to prevent the commission of a forcible felony. Logically follows that a person is not justified in the use of force if he is attempting or committing a forcible felony. Here there was evidence that the defendant arguably was committing an armed robbery, and that evidence was put forth at trial, and the people were entitled to rebut the defendant's claim of self-defense, that he approached this unarmed victim with a butcher knife and was merely trying to take his bicycle into the basement, but he recklessly stabbed him three times. That's a, I think that's a different, that's the number, the first issue. The issue we're talking about now is when the people asked the jury to find that under the facts, the defendant did not act in self-defense pursuant to Illinois law because he was in the act of committing an armed robbery. And that's nowhere in the evidence that was presented to this jury. That's my problem with this counsel. And then you get, but you get to say that to the jury in the end. Under the facts of this case, he could not have acted in self-defense because he was committing an armed robbery. But there was no talk about armed robbery that went to the jury until the end of the case. So they, you know, these are 12 ordinary people. They're not lawyers, so they're assuming that he must have committed an armed robbery. But you have to prove that. And yet you have to charge him, and you've got to prove it. In defendant's opening statement, Your Honor, they acknowledged the fight over the bike. They acknowledged the defendant had a butcher knife. Those are two of the three elements right there. The fight over the bike was not a, was not what they contended was an armed robbery, was it? No, Your Honor. What the defendant wants this court to do is the defendant wants to sanitize this event and say, Lawrence punched me. I was entitled to stab him three times. And what the people are asking this court to do is to look at the circumstances and the facts preceding the stabbing, the stabbing itself, the three separate stab wounds, and the fact that after the stabbing, the defendant made no attempt to help Lawrence, didn't call an ambulance, didn't call the police. In fact, when he was confronted by the police officer, he lied because he knew he wasn't justified in what he did. He said somebody stabbed him. Well, that would go to the first instruction about the recklessness and whether it was involuntary manslaughter. We're talking about the issue regarding the armed robbery now. That's what I'm focused on right now. And I think that that's a different issue. Your Honor, given the facts of the case, the people argue that the trial court properly allowed the challenge instructions since they were triggered in response to the defendant's claim of self-defense and the disputed issue of the initial aggressor. The trial court decided that it was up to the jury to determine, under the facts of the case, whether the defendant was acting in self-defense. The jury clearly rejected that, and they clearly rejected any mitigating factor. They found the defendant guilty of first-degree murder. Even without the challenge instructions, the verdict would not have been different. Thank you. Thank you, Your Honor. Ms. Weiler, a brief rebuttal, please. Just very briefly, I just would point out that defense counsel filed their answer on April 25, 2005. The trial started July 16, 2007, more than two years later. Nowhere during the course of that two years did any indication of armed robbery ever take place. So she didn't have an opportunity to form her defense around contending against this armed robbery. I also just want to point out that the jury was never actually asked to determine whether or not an armed robbery took place. They didn't get an issues instruction, and they didn't get a verdict form. So basically, they were just told that an armed robbery took place. And without any opportunity to defend against this, it was fundamentally unfair. Could you address the harmless error issue? Well, I think the error is clear. Defense counsel, as I indicated earlier, listed an entire list of things she could have done differently. As to whether or not the fact that second degree should be taken into consideration, the second degree juridic forms, I would just say that the fact that there was an armed robbery instruction affected whether or not the jury believed the use of force was justified. The jury could believe that he was not justified because, and he could not have believed that he was justified because he was committing an armed robbery. The way that the jury was instructed in this case affected the way that it considered not only self-defense but also second degree murder. And again, the way that defense counsel could have addressed armed robbery would have made a difference as to both of those verdict forms. If there are no further questions, I'd ask this Court to reverse and remand for a new trial. Thank you. Thank you. This matter will be taken under advisement. This Court stands adjourned.